WILLIAM MATHEWS *versus* SAMUEL BOWMAN.

In an action to recover a fine for neglecting to attend a company training, under the militia act of 1834, where the writ was without any date showing the time when it was sued out, the magistrate at the trial had power to permit the plaintiff to amend his writ by inserting the time when it was in fact issued.

If the declaration in such action alleges, that the defendant " was legally warned to appear" at a certain time and place by order of the commanding officer of the company, " armed and equipped according to law for the purpose of inspection, review and military discipline," it is unnecessary to allege also, that the meeting of the company was in obedience to a regimental order.

And it is not bad in substance, if it be alleged in the declaration that the company was called out by the commanding officer thereof, " for military duty and discipline," when the statute gives him power only to call out the company, " to be trained and disciplined."

An amendment may be allowed by the justice, authorizing the insertion of the capacity in which the person claiming to have been the commanding officer of the company, acted as such.

A copy of the order of the Governor and Council establishing a militia company — a copy from the town records of the assignment of limits of the company by the selectmen of the town, under Stat. 1832, c. 45 — and a copy from the office of the Adjutant General, showing that the limits of a certain company in a regiment, now designated by a particular letter of the alphabet, and the one before mentioned were identical — were held to be competent and sufficient evidence to prove the organization of the company, its limits and its attachment to that regiment.

If an officer of a militia company does not attempt to perform any of the appropriate duties of his office, and has been discharged because he had removed to a great distance from his command, and the discharge is retained by the officer to whom it was sent for delivery because the person for whom it was intended could not be found , the office is vacated without such delivery.

If a person be elected an officer of a company of militia, and his commission be made out and transmitted to the adjutant of the regiment, but not delivered to the officer elected, and returned to the office of the Adjutant

Mathews *v.* Bowman.

General, and the office declared to be vacant by the Commander in Chief; the person so elected is not an officer of the company, having power to act as such.

Militia *rosters,* being required to be kept by sworn officers, are competent evidence to prove the time when commissions and discharges were delivered to the persons for whom they were intended.

An order made out and signed by a Lieutenant Colonel commanding a regiment of militia, detailing an officer to take command of a company destitute of commissioned officers, but not delivered over until after the Lieutenant Colonel had been elected and commissioned as Colonel, is nevertheless a valid order.

Parol evidence is admissible to prove the resignation or discharge of a sergeant of a company of militia.

It is sufficient, if such detailed officer sign an order to warn the company as commanding officer of the company, without stating the source of his authority, or what commission he held.

The roll of the company, on which his name is found, made out after such detailed officer took the command, is evidence of the enrolment of a private in the company, without the production of any previous roll, or orderly book of the company.

If the roll of a company is twice called, and the absence of a private is noted at the second call only, this furnishes *prima facie* evidence of the absence, and without countervailing proof is sufficient. And if the absence be noted on a list used at the time, and afterwards that list is put in a more permanent form by the same person, it does not impair its validity.

The statute of 1837, c. 276, § 2, authorizing the commanding officer of a regiment of militia to detail an officer to train and discipline a company which has been without commissioned officers for the term of three months, is not unconstitutional.

THIS was a writ of error brought by Mathews to reverse a judgment against him before a justice of the peace, in an action originally brought by Bowman against him to recover a fine for non-appearance at a regimental review, he being, as was alleged, a member of the D company of militia in the second regiment, first brigade, and second division of the militia of this State, or east company of militia in the town of Waterville, and liable to do militia duty therein. Bowman was the lieutenant of another company of militia, and was detailed to train and discipline this company, because it was without commissioned officers; and in that character brought his action of debt to recover the penalty alleged to have been

incurred by Mathews by neglect of duty as a member of the D Company.

It is believed, the points decided may be sufficiently understood from the errors assigned and from the opinion of the Court, without giving the long record of the justice.

Mathews assigned the following fourteen errors, as reasons for reversing the judgment of the justice.

And the said Mathews says, that in the records and proceedings aforesaid and in the rendition of judgment thereon there is manifest error in this, to wit : —

First. Because said justice allowed the plaintiff to amend his writ by inserting a date to the same.

Second. Because said justice allowed the plaintiff to amend his writ by inserting in the declaration the authority by which he assumed to be commanding officer of said company.

Third. Because said justice decided that the statute approved March 28th, 1837, c. 276, by authority of which the said Bowman assumed to act, does not conflict with the constitutional right of the citizen soldier to choose his own company officers, as provided in article 7th, section first, of the constitution of this State, and that the said Bowman could maintain his said action without proving that the electors of the D Company had ever refused and neglected to choose officers when ordered so to do.

Fourth. Because said justice decided that it was not necessary for said Bowman to set forth in his declaration that the colonel of said regiment ordered the regimental review, for non-appearance at which the said Mathews was sued.

Fifth. Because said justice decided that the papers, which were introduced at the trial, were legal and sufficient evidence to prove the organization, arrangement, and limits of the east company of militia in Waterville, and also to prove that said company is the D company of militia in the second regiment, first brigade and second division of the militia of Maine, as alleged in the said Bowman's writ, to wit : —

A copy of an order of the Governor and Council of the State of Massachusetts, dated February 24th, 1803.

Mathews v. Bowman.

Also a copy from the town clerk's office of Waterville of the record of assignment of the limits of the east company of militia in Waterville by the said town, dated April 9th, 1836.

Also a copy of the limits of the D company of militia in Waterville from the office of the Adjutant General of Maine.

Sixth. Because said justice admitted the rosters of said division, brigade and regiment as legal evidence to prove that said D company had been without officers three months before the detailing order was issued by said Lieutenant Colonel Bartlett.

Seventh. Because said justice decided that the discharge of John Skinner, as captain of said company, issued by the Governor and deposited in the hands of the colonel of the regiment and never delivered to said Skinner, vacated his office as captain of said company.

Eighth. Because said justice decided that an order by the Governor, dated August 14th, 1839, Numbered 75, and declaring the commissions of Aaron W. Smith, as captain, and Watson F. Jones as ensign of said company, vacant, was a legal discharge of said Smith and Jones from the said offices in said company to which they had been respectively chosen and commissioned.

Ninth. Because said justice refused to allow the said Mathews to prove that said Smith and Jones were residing within the limits of said company at the time the adjutant of the regiment made the representation on which said order, numbered 75, declaring their said commissions vacant was made by the Governor.

Tenth. Because said justice admitted illegal evidence to prove the discharge of James Hasty, jr. as serjeant and clerk of said company.

Eleventh. Because said justice decided that the detailing order issued by Bartlett to Bowman was properly signed by Bartlett as Lieutenant Colonel of said regiment, and that Bowman was thereby legally detailed to the command of said company.

Twelfth. Because the said justice decided that it was not

necessary for the said Bowman to set out in the company order, directed to the warning officer, requiring him to notify the members of this company to do duty, nor in the notice or warning to the privates, the delegated or detailed capacity by virtue of which he assumed to be commanding officer of said company.

Thirteenth. Because said justice decided, that it was not incumbent on the said Bowman, in order to prove the enrollment of said Mathews, to produce or prove the requisition made upon the selectmen of the town of Waterville to return a roll of the members of said company, nor to produce the roll returned by the selectmen, nor to produce the record of the roll of said company ; and that it was not necessary for him to produce the orderly book of said company to prove the meeting or mustering of said company.

Fourteenth. Because said justice admitted improper evidence to prove the absence of said Mathews at said training.

The case was fully argued in writing, by

*Moor*, for the plaintiff in error, and by

*Noyes*, for the original plaintiff.

As the interest in militia cases has much diminished since the repeal of the act of 1834, c. 121, the cases arising under that statute have been compressed by the reporter, as much as possible. The arguments of the counsel cannot be given in this case without a departure from this rule.

The *counsel for the plaintiff in error* argued in support of the objections taken in the assignment of errors.

In support of his argument on the first point, he cited Stat. 1834, c. 121, § 45 ; Stat. 1831, c. 63 ; *Bell* v. *Austin*, 13 Pick. 91 ; *Bailey* v. *Smith*, 3 Fairf. 196 ; 2 Johns. R. 190 ; *Steward* v. *Riggs*, 9 Greenl. 53 ; 3 Wils. 341 ; 2 Saund. on Pl. & Ev. 964 ; Buller's N. P. 195 ; 7 T. R. 6 ; 2 B. & P. 157 ; 10 Pick. 45 ; 19 Pick. 377 ; 3 Mass. R. 209 ; Rev. Stat. c. 115, § 9, 10 ; 1 Metc. 555.

As to the 4th. 1 Chitty's Pl. 405 ; 2 Saund. 305, note 5 ; 2 Saund. Pl. & Ev. 850 ; 13 Johns. R. 428 ; 3 Wils. 318 ; 2 W. Black. 842 ; 5 East, 244 ; *Heald* v. *Weston*, 2 Greenl. 348.

On the 6th.    Stat. 1837, c. 276; *Gould* v. *Hutchins,* 1 Fairf. 150.

On 7th.    *Lovett, Pet'r,* 16 Pick. 84.

On 8th.    *Cutler* v. *Tole,* 3 Greenl. 83 ; *Gould* v. *Hutchins,* 1 Fairf. 153 ; *Howard* v. *Folger,* 3 Shepl. 447.

On the 10th.    2 Fairf. 32 ; 18 Maine R. 290.

13th.    Stat. 1837, c. 276; *Cousins* v. *Cowing,* 23 Pick. 208; *Gleason* v. *Sloper,* 24 Pick. 181.

The *counsel for the defendant in error* said that it was not necessary for him, in arguing for the defendant in error, to follow the order indicated in the assignment of errors, but would adopt the following arrangement.

1. The exceptions to the proceedings and decisions of the justice, pertaining to the writ and declaration, furnish no cause for reversing the proceedings.

Under this he cited *Converse* v. *Damariscotta Bank,* 3 Shepl. 431; *Parkman* v. *Crosby,* 16 Pick. 302; *Bragg* v. *Greenleaf,* 2 Shepl. 395 ; *Robinson* v. *Folger,* 5 Shepl. 206 ; *Johnson* v. *Farwell,* 7 Greenl. 370.

2. Nor is there cause for reversing the judgment on account of the objections pertaining to the establishment and limits of the D company.    Here was cited *Avery* v. *Butters,* 2 Fairf. 406.

3. The evidence was sufficient to prove the right of the original plaintiff to command the D company at the time alleged in the writ.    15 Johns. R. 208; *Lovett, Pet.* 16 Pick. 86 ; *Hill* v. *Fuller,* 2 Shepl. 121 ; 11 Johns. R. 158.

4. The acts of Bowman in calling out the company were legal, and the proof of delinquency on the part of Mathews sufficient.    *Hammond* v. *Dunbar,* 24 Pick. 180 ; Stat. 1834, c. 121, § 21; *Rollins* v. *Mudgett,* 4 Shepl. 340 ; *Hill* v. *Fuller,* 2 Shepl. 125 ; *Robinson* v. *Folger,* 5 Shepl. 206.

The Stat. 1837, c. 276, under which the defendant in error acted, was constitutional.    *Cousins* v. *Cowing,* 23 Pick. 212.

The opinion of the Court was drawn up by

TENNEY J. — This is a writ of error to reverse a judgment of

a justice of the peace rendered against Mathews, the plaintiff in error, to recover the penalty for absence from a meeting of the company to which he is alleged to belong, for inspection, review, and military discipline, on the 18th of September A. D. 1841, brought by the defendant in error as commanding officer of the D company of infantry in the 2d regiment, 1st brigade and 2d division. Several questions are presented, some of which are in matters of form, others are of substance.

1. When the writ was returned, it was destitute of a date and the justice allowed it to be amended by inserting the date which from the evidence was according to the truth. This amendment we think properly allowed. Cases have been cited, showing that parol evidence is admissible to prove the date of a writ to be erroneous; and that the error may be corrected by amendment. It is true no reference has been made to a case where there was no date in the writ, but in all, there was no apparent defect in this respect. In the case, however, of *Trafton & al.* v. *Rogers*, 1 Shepl. 315, the day on which the writ purported to have been made was the Sabbath, which was certainly as great an irregularity, as being wanting in a date. The teste of a writ has been regarded as mere form, where the constitution required, that all writs issuing from the Court should be tested by the first Justice thereof. *Hawkes* v. *Kennebec*, 7 Mass. R. 461. In *Pepoon* v. *Jenkins*, Coleman, 55, a writ, which had not the signature of the clerk of the Court, to which it was returnable, was capable of being amended, by the clerk's putting his signature thereto after it was returned. A writ omitting to set out the day on which the neglect took place, and did not aver, that the defendant unnecessarily neglected to appear, was held to be properly amended. *Robinson* v. *Folger*, 5 Shepl. 206. In *Bronson* v. *Earl*, 17 Johns. R. 65, it is said, it is the intention and act combined which in fact constitutes the commencement of the writ.

In the case at bar, it was in evidence that the writ was seasonably purchased out, for the purpose that it might be served, although not put into the hands of the officer till after the

lapse of forty days from the time of the alleged neglect. The forms of writs prescribed by statute require dates, but an accidental omission of a date can be supplied with as much propriety as to allow any amendment in matter of substance. An amendment of the return day, and changing the seal from that of one Court to another have been denied. These cases are distinguished from the one now under consideration. Here the writ was in truth made at the proper time, but in the cases referred to, the wrong return day and seal, were in and upon the writ. Jurisdiction did not attach to the Court.

2. The writ did not set out originally the order of the commanding officer of the regiment, directing the regimental review. It is not denied, that the meeting of the company was in obedience to a regimental order; such an order was exhibited in proof at the trial. The writ alleges that the defendant in the original action " was legally warned to appear"——" armed and equipped according to law for the purpose of inspection, review and military discipline." There could be no " review" unless under an order of the commanding officer of the regiment; and the averment that the warning was legal embraces as well the authority by which the meeting of the company was required, as the manner of notice.

3. It is contended that the writ is wanting in the proper form, by alleging that the company was called out by the defendant in error " for military duty and discipline," when the statute gives him power only to call out the company " to be trained and disciplined." We think it cannot be doubted that military duty and such training as the statute refers to may be similar; and when the commanding officer is vested with the authority of a " captain" he did not exceed his powers in calling out the company for " military duty."

4. The amendment, allowed by the justice, by inserting the capacity in which the defendant in error claimed to be the commanding officer of the company, was clearly proper.

5. Was there legal and sufficient proof of the organization of the company, and that it was attached to the regiment, brigade and division named in the writ ? The deposition of the

Adjutant General of Massachusetts and the copy annexed thereto, show, that on the petition of the field officers of the 2d regiment, 2d brigade, and 8th division, " the town of Waterville was divided into two companies, viz: that all the privates in the eastwardly part of said town easterly of a line drawn precisely two miles from the river Kennebec from north to south, to form a new company," &c. The organization and arrangement of the militia, as it was at the time of the adoption of the constitution of the State, was to continue till the Governor and Council should otherwise order. Stat. 1821, c. 164, § 6. By the act of 1832, c. 45, § 9, the selectmen were to define the limits of companies and make return to the offices of town clerks, and by the statute of 1836, c. 206, § 1, selectmen were required to perform the same duties as those enjoined by the act of 1832, and also to make return to the Adjutant General's office. These returns of the selectmen are made by the statute conclusive evidence in all prosecutions for non-performance of military duty. Under both the above-named acts, the selectmen of Waterville performed their duties, as appears by the copies of the town clerk, and of the Adjutant General of this State. The case shows the fact, that the limits of the D company in Waterville are identical with those of the company formed by the order of the Governor and Council of Massachusetts in 1803. There is no order in the case showing at what time this company became attached to the 2d regiment, 1st brigade and 2d division, or that the number of the brigade and division was changed; but by the copy from the Adjutant General's office, it does appear, that the D company in Waterville is attached to the 2d regiment 1st brigade and 2d division, and therefore subject to the authority of the officers thereof.

6. Was it shown by the proper evidence, that the company had been destitute of any commissioned officer for the term of three months, before the detailing order, under authority of which, the defendant in error claims to have been the commanding officer thereof? This is denied, and it is contended that Skinner, who was commissioned Sept. 13, 1839, never

having received his discharge, which is dated April 30, 1840, and put into the hands of the Colonel of the regiment, who did not deliver it because of the removal of Skinner from the State to parts unknown, was still the captain of the company.

If a military officer assume to act under his commission, his acts do not cease to be valid, by the transmission of his discharge to the commanding officer of the regiment. A delivery to the officer, to be discharged is in such case necessary to give the order of. discharge effect. But if he does not attempt to perform any of the appropriate duties of his office, but "has removed from out of the limits of his command to a distance, which in the opinion of the Major General renders it inconvenient for him to discharge the duties of his office," and the discharge is retained by the officer to whom it was sent for delivery, because the latter is unable to find the officer discharged, it is otherwise. No one can object to the effect of the discharge, if the one directly interested do not. The construction contended for by the plaintiff in error would often lead to perplexing results. A company might in reality be destitute of officers, and be unable to supply the defect.

Again, it is said, if Skinner was discharged, Smith and Jones having been chosen captain and ensign since, are to be considered officers of the company. They were, it appears, duly elected, their commissions made out and transmitted to the adjutant of the regiment, and were afterwards returned to the Adjutant General's office, and the offices declared vacant by the commander in chief. These persons have never claimed their commissions, or power to exercise the duties appertaining to their offices respectively, which they were chosen to fill. It is contended, that they have not been discharged in either of the modes pointed out in the statute. From the evidence, which is not objected to, this could not be done. They were never commissioned, and could in no legal sense be regarded the officers of the company, so far as to prevent the application of the statute, which requires, that an officer shall be detailed to train and discipline the company.

7. Another error assigned is, that rosters, from which some

of the facts relied upon in the prosecution of the action were shown, were incompetent evidence. The officers required to keep rosters are recording officers, sworn to do their duty as such. The word roster is used instead of register, and comprehends a list of all military officers, connected with the regiment, brigade or division, and is to be kept as are records of "orders and official communications." It is from such a registry that many important facts can alone be proved. Commissions and discharges may not be proved by a roster, their existence may be shown by the commissions and discharges themselves, or by the records thereof in the Adjutant General's office; but at what time they were delivered to the individuals entitled thereto must depend upon rosters, as the highest species of evidence of such facts. If they were not intended to be evidence, it is not apprehended for what purpose they are required to be kept by such officers and with such formality. There was no dispute relative to any commission or discharge in the case at bar, but the controversy was touching their effect.

8. It is insisted, that the detailing order to the plaintiff in the original action, not having been delivered till after the officer, who executed it, was elected to a higher office, which he accepted, conferred no power over the members of the company. At the date of the order, Lt. Col. Bartlett was unquestionably the highest officer connected with the regiment, and consequently was required to issue the order. It was then valid, and did not cease to be so, by Bartlett's promotion. It was delivered in pursuance of the original intention of the officer, who signed it. It was similar to a commission issued under the authority of one Governor and delivered by his successor.

9. The plaintiff in error contends, that when the action was commenced, and when the alleged delinquency happened, James Hasty, jr. was the clerk of the company, and that he alone could institute the suit; and that evidence allowed to prove that Hasty was not clerk was contradictory to the warrant, and inadmissible. If such was the effect of the evidence

it was incompetent; the warrant and the certificates thereon were conclusive of the facts therein stated. The evidence to prove a discharge or resignation is not required to be in writing, and the parol evidence for this purpose was admissible, and satisfied the justice, though in some respects contradictory, that Hasty, not being liable to do military duty, declined to act as clerk, and the papers in the case show, that another was subsequently appointed to fill the office. This may properly be considered a resignation by Hasty, and acceptance thereof by the commanding officer of the regiment.

10. The company order to Asa Irvin to warn the plaintiff in error, and others, was signed by Bowman, as " commanding officer of the D Company of infantry, 2d regiment, 1st brigade and 2d division," and it is objected that the order does not describe the capacity in which said Bowman claimed to be commanding officer of said company, and that the notice was according to the order. Bowman was the commanding officer of that company by the detailing order, for the purpose of training and disciplining its members, and he had the same power and authority as he would have had, if he were the captain thereof. Stat. 1837, c. 276, § 2. It was no more material that the order should state the source of his authority, than if he was commissioned as the captain.

11. The roll prepared by the defendant in error was the only one introduced at the trial as proof of the enrolment of the plaintiff in error; and it is insisted, that the justice erred in not requiring the roll prepared by the assessors of the town, on the call of the commanding officer of the regiment, from which the one introduced was prepared. The roll from the assessors was for another and distinct purpose, and might often be very different from that which would bear the existing members of the company afterwards. The statute of the United States of 1792, and of this State of 1834, require the commanding officers of companies to enrol the persons liable to perform military duty. It is immaterial from what source the knowledge necessary for the performance of this duty is derived. A roll previously prepared may be one legitimate

source.   The roll produced was competent evidence.   *Cousins* v. *Cowing*, 23 Pick. 208.

12. The evidence introduced of the absence of the plaintiff in error was competent.   The roll was called by the direction and in the presence of the commanding officer, and the absences noted at the time, known by him to be correct, and afterwards reduced to a more permanent form by himself. The objection, that the absence of the defendant was noted at the time of the second call instead of the first is not well sustained.   No time is prescribed when the roll shall be called, nor is it required that there shall be but one call thereof.   The absence at the second call is *prima facie* evidence of such a delinquency as that complained of; and without countervailing proof, is sufficient.

13. But a more important question is presented.   The plaintiff in error denies to the defendant in error all authority as commanding officer of the company to which it is alleged he belongs; and this because the statute of 1837, before referred to, § 2, is in contravention of the constitution, art, 7, § 1 and 2; by which members of companies are secured in the privilege of electing their captains and subalterns, and in case of neglect or refusal, those officers are to be appointed by the Governor.   The proposition, in other words, is, that companies cannot be trained and disciplined by compulsion, excepting by the officers chosen by a majority of the members of each company or by those who are appointed by the Governor.

Companies may have been and undoubtedly were sometimes destitute of commissioned officers, without the fault of any one.   No man was compelled to accept the office of captain or subaltern.   Numerous elections may have taken place, and no one elected have chosen to take the honor tendered.   The want of commissioned officers may have arisen from the fault of the commanding officer of the regiment, brigade or division in failing to transmit or issue the necessary orders. Such orders were required to proceed from those, over whom the company have no direct control.   If they neglected or refused to elect, the Governor might, for a reason sufficient or

not, delay the appointment. These impediments to the election or appointment of captains and subalterns may have abridged the rights of those affected thereby. One or more of such causes may have rendered a company destitute of any commissioned officer for a long time. Were soldiers therefore to receive no benefit from military training and discipline; were they entitled to be relieved from the burden, if they considered it such, arising from the performance of military duty; or what was more important, was the State to be deprived of the service of the militia to an unlimited extent, in a time of her greatest need, because companies had no captains or subalterns; or was the nation to lose the advantage to be obtained from the training of such companies, when by her laws, all able bodied citizens within certain ages, with a few exceptions, were to be at all times ready for actual service? Such a construction as that contended for by the plaintiff in error would give to the object intended by this part of the constitution to be secured, less importance than the manner, by which it was to be obtained.

No one could have been a captain or subaltern excepting in some of the modes pointed out in the constitution. But it does not follow, that the members of a company destitute of those officers were not the subjects of military discipline. Every company was attached to some battalion, or regiment, or brigade, or division, and was subject to the direction of the respective officers thereof. It is contended that to give effect to this statute would have placed in the hands of superior officers, the actual appointment of captains and subalterns, and thereby have taken away the privilege secured by the constitution to the citizen soldier. If the want of company officers arise from the neglects, or faults of other officers of superior rank, the latter were amenable to the laws, and like all offenders against their provisions, were subject to trial and punishment. A law is not to be pronounced unconstitutional, because its abuse and perversion proves injurious to individuals or to the public.

The establishment of the truth of the plaintiff's proposition

must have introduced an essential change in the military pro-
ceedings, at meetings of battalions or regiments, in the ar-
rangements, which it was necessary to make, soldiers were
often placed under the command of the captains and subal-
terns of companies, to which such soldiers did not belong.
Death, resignation, removal, or other causes might have taken
from a company all its commissioned officers, at a time when
training and discipline were essential to the defence of the
country or public tranquillity. For various purposes detach-
ments of a limited number of the officers and privates of the
militia may have been ordered to hold themselves in readiness
at all times, to repair to the post where their services were
needed. The construction contended for, would require, in
order that such detachments should be legal, they should be
made by entire companies, which would be unreasonable, and
not contemplated by the framers of the constitution. These
consequences, which would result from the doctrine advanced,
would have been subversive in a great degree of the object
sought in the constitution ; but the statute in question was
carrying out the manifest intention of its authors, that the
militia should be efficient for the purposes intended.

*Judgment affirmed.*